FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

00 FEB 17 AM 9: 24

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MARY DRAKE, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV98-H-2372-NE |
| ADTRAN, | ) | |
| DEFENDANT. | ) | |

ENTERED

FEB 1 7 2000

## MEMORANDUM OF DECISION

The Court has before it the July 30, 1999 motion of
defendant Adtran for summary judgment.  Pursuant to the Court's
August 2, 1999 order, the motion was deemed submitted, without
oral argument, on August 30, 1999.

### I. Procedural History

Plaintiff Mary Drake commenced this action on September 21,
1998 by filing a complaint in this Court alleging both racial
discrimination and retaliation in violation of Title VII and 42
U.S.C. § 1981.  Plaintiff contended that defendant discriminated
against her because of her race by improperly denying plaintiff a
merit raise and by ultimately terminating plaintiff's employment
and that defendant also retaliated against plaintiff because of
her opposition to unlawful employment practices.  (See Compl. ¶¶

31

6-11.)  Defendant's July 30, 1999 motion for summary judgment
asserts that no issue of material fact exists and that defendant
is entitled to judgment as a matter of law.  (See Def.'s Mot.
Summ. J. 1)

Both parties have submitted evidence and have filed briefs
respectively supporting and opposing the motion for summary
judgment.  Defendants filed a brief and submitted evidence[1] in
support of the motion on July 30, 1999.  On September 3, 1999,
plaintiff submitted evidence[2] in opposition to the motion, and

---

[1] Defendant submitted the plaintiff's response to
defendant's first request for admissions; the defendant's
responses and objections to plaintiff's first interrogatories;
the July 28, 1999 declaration of Peter Ritch; excerpts from the
March 23, 1999 deposition of Mary Drake; excerpts from the June
30, 1999 deposition of Peter Ritch; excerpts from the June 29,
1999 deposition of Jude Panetta; excerpts from the June 29, 1999
deposition of John Swimelar; excerpts from the June 30, 1999
deposition of Anthony Williams; excerpts from the June 29, 1999
deposition of Eddie Littrell; a copy of Rocky v. Columbia
Lawnwood Reg'l Med. Ctr., 1999 U.S. Dist. LEXIS 10630 (S.D. Fla.
1999); and a copy of Mann v. Olstein Certified Healthcare Corp.,
1999 U.S. Dist. LEXIS 7467 (M.D. Ala. 1999).

[2] Plaintiff submitted the September 2, 1999 declaration of
Mary Drake; pages 15 and 16 of the Adtran Employee Handbook; the
August 22, 1996 revision of the Adtran Employee Handbook § 5.4;
the May 27, 1997 revision of the Adtran Employee Handbook
regarding Absences Without Pay (AWOP); the February 25, 1998
termination report for Mary Drake; the January 1, 1998 hourly
employee performance appraisal for Mary Drake; the January 1,
1998 employee status change form for Mary Drake; the January 20,
1998 memorandum from Anthony Williams to Mary Drake regarding
tardiness and absenteeism with attached tardy and late slips; a

2

filed an opposing brief on September 17, 1999.[3]  On October 4,

1999, defendant filed a reply brief as well as supplemental

evidence[4] in support of its motion for summary judgment.  Having

been thoroughly briefed, the motion is ripe for consideration.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary

---

report titled "Violation of Company Policy 5.4--Termination
Records" with termination reports for J. Clay, R. Sobieski, and
B. Slaten; an August 10, 1998 memorandum from Michael Tremblay to
Allen Smith regarding a leave of absence for Tremblay with an
attached January 7, 1999 letter of termination; Adtran documents
D0204 through D0207 concerning Brad Dunkerly, Jr.; a June 14,
1996 memorandum from Pete Ritch to Mary Drake; the September 3,
1999 declaration of Joseph P. Flood; the September 2, 1999
declaration of Trever Minton; excerpts from the March 23, 1999
deposition of Mary Drake; excerpts from the June 30, 1999
deposition of Peter Ritch; excerpts from the June 30, 1999
deposition of Anthony Williams; excerpts from the June 29, 1999
deposition of John Swimelar; excerpts from the June 29, 1999
deposition of Jude Panetta; and excerpts from the June 29, 1999
deposition of Eddie Littrell.

[3] Defendant has moved to strike portions of Mary Drake's
September 2, 1999 declaration; portions of Joseph P. Flood's
September 3, 1999 declaration; and portions of plaintiff's brief.
(See Def.'s October 4, 1999 Mot.)  In considering defendant's
motion for summary judgment, this court will not consider any
portions of the challenged declarations which are not based upon
personal knowledge, which contain hearsay not within any
exception, or which are otherwise inadmissible.  As for
plaintiff's brief, the Court sees no reason to strike any
portion.

[4] Defendant submitted pages 70 and 71 from the March 23,
1999 deposition of Mary Drake and page 98 from the June 30, 1999
deposition of Anthony Williams.

3

judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

4

Anderson, 477 U.S. at 248. If the evidence is merely colorable,
or is not significantly probative, summary judgment may be
granted. Id. at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears
the burden of proof on the issue at trial. See Fitzpatrick, 2
F.3d at 1115-17 (citing United States v. Four Parcels of Real
Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the
moving party bears the burden of proof at trial, then it can only
meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a
directed verdict if not controverted at trial. Fitzpatrick, 2
F.3d at 1115. Once the moving party makes such a showing, the
burden shifts to the non-moving party to produce significant,
probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at
trial, it can satisfy its initial burden on summary judgment in
either of two ways. First, the moving party may produce
affirmative evidence negating a material fact, thus demonstrating
that the non-moving party will be unable to prove its case at
trial. Once the moving party satisfies its burden using this

5

method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

6

### III. Relevant Facts

Plaintiff began her employment with defendant Adtran as an hourly employee in 1991. Plaintiff held several different and progressively higher paying positions with defendant from the time she started in 1991 until her termination in February of 1998. During her seven years' employment with defendant, plaintiff made at least three complaints of racial discrimination to Adtran management, including at least two to human resources director Peter Ritch. The first complaint, made in 1996, concerned a co-worker's refusal to share a filing cabinet and was apparently satisfactorily resolved by ordering a new cabinet for the co-worker. The second complaint to Ritch was made in late 1997, following plaintiff's return from medical leave necessitated by foot surgery in October of 1997. Plaintiff believed that Adtran supervisor John Swimelar's decision to give her position to a white employee during plaintiff's leave and retain the white employee in that position after plaintiff's return was racially motivated; according to plaintiff, she confronted Swimelar and, then, Ritch about what she perceived as discriminatory treatment. That incident was also apparently resolved internally to plaintiff's satisfaction.

In January of 1998, plaintiff again had cause to complain of

what she perceived as discriminatory treatment.  Every six months from 1991 through 1997, plaintiff had received merit raises, based largely upon her semi-annual evaluations.  In 1997, after Anthony Williams became her immediate supervisor, the size of plaintiff's raises decreased as her performance evaluations became less positive in two areas, attendance and dependability. In January of 1998, plaintiff received no raise.  Plaintiff confronted Williams, then Swimelar, and finally went to Adtran executive George Baxley.  Baxley conducted an investigation into the situation.

Adtran's raise policy prohibited hourly employees who had been issued a written warning during the previous six-month evaluation period from receiving merit raises.  Apparently during a review to determine plaintiff's eligibility for a raise in January of 1998, Williams informed Swimelar that he believed that plaintiff had been issued a written warning for attendance problems in the preceding six-month period.  Plaintiff's raise was then denied.  During Baxley's investigation, however, no record of a written warning issued to plaintiff could be found. Plaintiff's raise was then approved and, according to an "Employee Status Change Form" dated January 19, 1998, was made effective as of January 1, 1998.

On January 20, 1998, Williams attempted to issue plaintiff a written warning for attendance problems.  The warning cited three tardies in the previous review period, including one occasion on September 23, 1997.  The document also noted that plaintiff had received a verbal warning on October 2, 1997, but that plaintiff then had been tardy on January 5, 1998.  Plaintiff refused to sign the written warning because, she claimed, it could be used to deny her a pay raise at the end of the then-current review period.

Also in January of 1998, plaintiff took leave to celebrate Martin Luther King, Jr.'s birthday.  The leave was authorized in advance.  Upon plaintiff's return to work following the King birthday, she was asked to complete an absence slip; plaintiff objected because the leave had been approved in advance.  In response, plaintiff was informed that a new Adtran policy required all employees to complete absence slips for all missed days, even when taking pre-approved leave.

The following month, plaintiff requested a leave of absence to better attend to a problem related to her purchase of a new automobile.  Plaintiff had purchased a new automobile from a local dealership but upon taking the car home, discovered that the automobile given her by the dealership was not the same one

9

which she believed that she had purchased. On February 19, 1998,
plaintiff requested a three-day leave of absence effective
February 20 so that she could resolve the problem with the
dealership. Plaintiff spoke with her supervisor Williams, who
advised her that he could not grant a leave of absence and
suggested that absence without pay ("AWOP") might be available.
However, Williams indicated to plaintiff that he could not
approve AWOP either and informed her that Jude Panetta (an Adtran
vice-president), who could approve AWOP, was in a meeting and,
consequently, was unavailable to consider plaintiff's request.
At some point, plaintiff also spoke with Eddie Littrell in
Adtran's personnel department and, according to plaintiff,
completed the necessary forms for AWOP. Later, on the afternoon
of February 19, plaintiff again approached Williams to inquire
about leaving early that day. Because plaintiff had a few hours
of accrued sick leave available, Williams told plaintiff that she
could leave but requested that she call him before the end of the
day. Although neither Williams nor any other person at Adtran
explicitly informed plaintiff that her requested three-day AWOP
had been granted, plaintiff has averred that when she left work
on February 19 she understood that she had been granted AWOP for
February 20, 23, and 24, and that Williams's request that she

10

telephone him was simply to inquire about her success in resolving the issue with her new automobile.

In fact, the request for AWOP was never approved. Williams was unable to contact Panetta or any other Adtran executives before plaintiff departed on February 19, although he did leave a telephone message for George Baxley. Furthermore, Panetta, who had the authority to approve the AWOP, apparently remained unaware of the request until after the plaintiff's eventual termination. Panetta was unaware, but Williams's own supervisor, John Swimelar, was informed of plaintiff's desire for a three-day AWOP; however, according to Swimelar, he did not have enough information to approve the request or to forward the request to a higher-level member of management. Therefore, no action was taken regarding plaintiff's request for AWOP, and Williams never received a telephone call from plaintiff on the afternoon of February 19, 1998.[5]

Plaintiff did not report to work on February 20, 23, or 24, and failed to call Williams on any of those three days. On Wednesday, February 25, 1998, plaintiff reported to work as

---

[5] Plaintiff has claimed that she did call Williams's office but that when he did not answer, she assumed that he had already left for the day and decided not to leave a message.

11

normal.  That morning, Williams asked plaintiff to meet with him
and John Swimelar in Swimelar's office.  During that meeting,
plaintiff was informed that she had violated company policy by
not reporting to work or notifying her supervisor for three days
and that disciplinary action would be taken.  Later that day,
plaintiff was asked to attend a meeting with Williams, Swimelar,
and Peter Ritch, in Ritch's office.  At that meeting, Ritch
informed plaintiff that she was being terminated for violating
section 5.4 of the Adtran employee handbook, which allows
termination after an employee has failed to report to work for at
least two consecutive days without contacting that employee's
supervisor.  Plaintiff was then escorted from the premises.
Attempts at regaining her position were unsuccessful.

Following her termination and failed attempts to return to
Adtran, plaintiff timely filed a charge of discrimination with
the Equal Employment Opportunity Commission ("EEOC").  After
receiving a right to sue letter from the EEOC, plaintiff then
timely initiated the present litigation.

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains both racial discrimination

and retaliation claims under Title VII.[6]  The Court has

identified two separate race claims, the first relating to the

defendant's initial denial of plaintiff's merit raise in January

1998 and the second to plaintiff's termination in February of

1998.   In addition, the Court has identified retaliation claims

arising from the denial of plaintiff's January 1998 raise, the

attempted issuance of a written warning in January 1998, the

request that plaintiff complete an absence slip following her

return from leave for Martin Luther King, Jr.'s birthday, and the

firing of plaintiff in February 1998. Defendant's brief in

support of its motion for summary judgment asserts that plaintiff

has failed to establish a prima face case and has failed to offer

sufficient evidence that defendant's proffered legitimate reasons

for its actions are merely pretextual.   The Court will address

the plaintiff's race and retaliation claims separately.

---

[6] Plaintiff's complaint also raises the same claims under 42
U.S.C. § 1981.  Because the elements of a section 1981 claim are
identical to those of a Title VII claim, the Court need not
analyze this plaintiff's case under both theories but notes that
the outcomes for plaintiff's section 1981 claims are the same as
those discussed in the main text in connection with her Title VII
claims.   See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318,
1330 (11th Cir. 1998) ("Both of these statutes [Title VII and
section 1981] have the same requirements of proof and use the
same analytical framework, therefore we shall explicitly address
the Title VII claim with the understanding that the analysis
applies to the § 1981 claim as well.")

13

## 1.  Race Claims

As previously discussed, plaintiff presents a claim of racial discrimination under Title VII predicated upon disparate treatment in pay increases and in discipline.  Title VII provides generally that an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1) (1994) (emphasis supplied).  Plaintiff attempts to prove her case of disparate treatment through the use of indirect or circumstantial evidence.  (See Pl.'s Br. 16 & n.12.)  "In evaluating Title VII claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Circuit 1997).

Under the McDonnel Douglas and Burdine framework, the Title VII plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption

14

that the employer acted illegally. See id. at 1527-28. Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden shifts to the employer to proffer a legitimate and nondiscriminatory reason for its actions. See id. at 1528. If the employer articulates such a reason, then the presumption of discrimination falls and the burden of production again shifts to the defendant to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. See id. Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did

15

indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, permitting but not compelling the trier of fact to make a finding of illegal discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

The Court turns first to plaintiff's disparate treatment claim arising from the initial denial of a merit raise in January of 1998 and to whether plaintiff has established her prima facie case. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (1984). In general, a plaintiff establishes a prima facie case of racial discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse job action but that otherwise similarly situated employees of a different race were treated dissimilarly. See McDonnell Douglas Corp., 411 U.S. 792, 802 (1973). For plaintiff's claim relating to the initial denial

16

of a merit raise in January of 1998, plaintiff must show that she

was a member of a racial minority; that she was otherwise

qualified for a merit raise; that she was denied a raise, which

denial amounted to an adverse employment decision; and that

similarly situated employees of other races did receive raises.

The Court finds that plaintiff has failed to satisfy this initial

burden because she has not produced evidence supporting all four

elements of her prima facie case.

Specifically, the Court finds that plaintiff cannot

establish that she suffered an "adverse" employment action

resulting from the initial denial of a merit raise. Although

defendant at first determined that plaintiff was not entitled to

a raise, that decision was quickly reversed and plaintiff, in

fact, did receive her raise. Plaintiff admits that she

ultimately received the raise to which she believed she was

entitled and although she claims that she suffered a financial

loss because of the initial denial, she has offered no evidence

to support that claim. In contrast, the objective evidence,

consisting of plaintiff's "Employee Status Change Form," which

was signed by plaintiff, indicates that the raise was made

effective from January 1, 1998. Furthermore, defendant has

offered as evidence the declaration of Peter Ritch, defendant's

17

human resources director, in which Ritch states that plaintiff

received her raise on the same day in the same pay period as

every other Adtran hourly employee and that the initial denial

did not result in any loss in pay. (See Ritch Decl. ¶ 6.)

Nothing indicates that plaintiff was actually harmed by the

temporary denial of her raise; therefore, plaintiff has not made

her prima facie case. See, e.g., Maniccia v. Brown, 171 F.3d

1364, 1369 n.3 (11th Cir. 1999) (finding transfer without loss of

pay or benefits to position plaintiff subjectively found

unobjectionable was not an adverse employment action); Hudson v.

Southern Ductile Casting Corp., 849 F.2d 1372, 1375 (11th Cir.

1988) (finding no racial discrimination where a temporary

"demotion" resulted in no loss of pay or benefits).

However, even if the Court assumes that plaintiff has

established a prima facie case of racial discrimination, the

defendants have articulated a legitimate, nondiscriminatory

reason for the initial denial of plaintiff's raise, which remain

unchallenged. See Combs v. Plantation Patterns, 106 F.3d at 1528

(explaining that a defendant may rebut a prima facie case with a

legitimate and nondiscriminatory explanation for its actions and

that the burden then shifts to the plaintiff to show pretext).

Defendant has offered the following explanation for the initial

18

denial of plaintiff's raise: Williams and Swimelar honestly but
mistakenly believed that plaintiff had been issued a written
warning for violating Adtran's attendance policies during the
previous review period, which made her ineligible for a raise.
An employer's good faith but mistaken belief that an employee has
violated a company policy or rule is sufficient to rebut a prima
facie case of discrimination.  See Jones v. Gerwens, 874 F.2d
1534, 1540 (11th Cir. 1989).  Although plaintiff challenges the
honesty of this mistake, she has presented no evidence seriously
impeaching the defendant's proffered explanation or even
suggesting that racial animus motivated Williams and Swimelar in
the decision.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502
(1993).  The plaintiff may truly believe that the delay in her
raise was racially motivated, but she has not come close to
demonstrating pretext; once the defendant has presented
legitimate, non-discriminatory reasons for its actions, the
plaintiff's own subjective beliefs and allegations of
discrimination, although sincerely held, cannot establish a
genuine issue of material fact such as to avoid a defendant's
motion for summary judgment.  See Young v. General Foods Corp.,
840 F.2d 825, 830 (11th Cir. 1988).

      To summarize, the defendant is entitled to summary judgment

                                  19

as to plaintiff's claim of racial discrimination arising from the
temporary denial of a merit raise in 1998. Plaintiff has failed
to demonstrate the existence of a prima facie case, and even if a
prima facie case were assumed, plaintiff has not produced
sufficient evidence that the defendant's articulated legitimate
reason for the delay in the granting of the raise is merely
pretext for illegal discrimination. Having disposed of
plaintiff's race claim relating to her delayed raise, the Court
now considers plaintiff's race claim arising from her termination
in February 1999.

Although defendant purportedly terminated plaintiff's
employment because she failed to report to work or contact her
immediate supervisor for two consecutive days, in contravention
of defendant's written attendance policy, plaintiff claims that
she was actually dismissed because of her race. As discussed
previously, the Eleventh Circuit has recognized that a plaintiff
in an employment discrimination action may attempt to establish a
prima facie case of discrimination by a variety of methods. See
Nix v. WLCY Radio/Rehall Communications, 738 F.2d 1181, 1185
(11th Cir. 1984). Nix describes one such method as follows:

> [A] plaintiff fired for misconduct makes out a prima
> facie case of discriminatory discharge if he shows that
> he is a member of a protected class, that he was

20

qualified for the job from which he was fired, and "that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained."

See id. (quoting Davin v. Delta Air Lines, Inc., 678 F.2d 567, 570 (5th Cir. Unit B 1982)). Alternately, rather than showing that a similarly situated employee who had engaged in similar conduct was not similarly disciplined, a plaintiff may demonstrate that he or she did not actually violate the rule for which he or she was disciplined. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). Here, plaintiff apparently attempts both methods, arguing both that she did not actually violate the attendance policy and that other employees were treated in a dissimilar manner. Neither method succeeds.

Plaintiff cannot demonstrate that she is innocent of violating Adtran's attendance policy. Her mistaken belief that her AWOP application had been approved does not change the fact that her absence was not approved and that by not reporting to work or contacting her supervisor for three days, plaintiff violated company policy. Taking plaintiff at her word, she was fired because of a misunderstanding, "[b]ut Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those

21

rules." <u>Nix</u>, 738 F.3d at 1187. Plaintiff clearly violated Adtran's rule, and, therefore, may not attempt to show illegal discrimination through her own innocence.

That leaves plaintiff the option of producing evidence that other employees of a different race engaged in similar conduct but were not disciplined as severely as was plaintiff. <u>See id.</u> at 1185. No disparate treatment can exist unless similarly situated employees are treated differently, for disparate application of a rule or policy is not discriminatory if the workers are or are believed to be disparately situated. <u>See id.</u> at 1186; <u>Jones</u>, 874 F.2d at 1540-41. As always, the burden of producing evidence demonstrating disparate treatment of otherwise similarly situated employees rests with the plaintiff. <u>See</u> <u>Jones</u>, 874 F.2d at 1541. Here, plaintiff has not offered sufficient evidence to allow a rational trier of fact to conclude that she was treated in a different fashion than similar, white employees.

Plaintiff has asserted that none of the purported comparators offered by defendant were actually terminated for a violation of section 5.4 of the Adtran employee handbook, as was plaintiff. Title VII, though, does not demand that comparators engaged in exactly the same conduct as the terminated employee;

22

the conduct need be merely similar or comparable.  See id. at

1541 & n.12.  See also Lathem v. Department of Children and Youth

Servs., 172 F.3d 786, 791-92 (11th Cir. 1999) (finding employee

and supervisor who were subject to the same work rules and who

engaged in improper fraternization to be similarly situated).  In

determining whether employees are similarly situated, courts look

to whether the employees were subject to the same rules and to

the employees' respective conduct and punishments.  See Lathem,

172 F.3d at 792.  Plaintiff has introduced no evidence that the

comparators were subject to different work rules, nor does the

evidence indicate that any of the other employees engaged in

significantly different behavior or that they received different

punishments.  Although the official personnel records reflect

varying reasons for each employee's ultimate discharge, in each

case, the essential predicate was poor attendance and the

punishment was the same, termination.  Thus, plaintiff and her

comparators engaged in substantially the same behavior (violating

Adtran's attendance policy) and received the same ultimate

punishment.  Plaintiff's attempts to distinguish herself from the

comparators are meaningless; furthermore, she has not identified

any additional Adtran employees who have committed such serious

violations of defendant's attendance policy yet have been

retained. Because plaintiff has failed to offer sufficient
evidence that similarly situated employees of another race were
differently disciplined, her discrimination claim premised upon
her termination must fail. See Jones, 874 F.2d at 1541-42; Nix,
738 F.2d at 1186-1187.

In short, no genuine issues of material fact remain as to
either of plaintiff's Title VII race claims and defendant is
entitled to judgment as a matter of law on both claims.
Therefore, summary judgment will be entered against plaintiff on
her disparate treatment race claims. The Court next considers
plaintiff's retaliation claims, arising from the delay in her
January 1998 raise, the issuance  in 1998 of a written warning
for poor attendance, the request that plaintiff file an absence
slip following her return from approved leave in January 1998,
and the termination of plaintiff's employment in February 1998.

## 2.  Retaliation Claims

In addition to her disparate treatment race discrimination
claims, plaintiff has asserted retaliation claims under Title
VII, as just noted. Title VII prohibits not only discrimination
in employment based on race, color, religion, national origin,
and sex, but also prohibits employers from retaliating against
any employee who "has opposed any practice made an unlawful

24

employment practice . . . ." 42 U.S.C. § 2000e-3(a) (1994). The
framework for analyzing a retaliation claim is essentially the
same McDonnell Douglas three-part analysis as employed for
disparate treatment claims. See Olmsted v. Taco Bell Corp., 141
F.3d 1457, 1460 (11th Cir. 1998) (discussing elements and burdens
of production and proof in a Title VII retaliation claim). The
key differences between the framework for disparate treatment
cases and that for retaliation cases lie in the elements of the
prima facie case.

"To establish a prima facie case of retaliation, [a
plaintiff] must show: (1) she engaged in protected activity; (2)
her employer was aware of that activity; (3) she suffered an
adverse employment action; and (4) there was a causal link
between her protected activity and the adverse employment
action." Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999)
(citing Little v. United Techs., 103 F.3d 956, 959 (11th Cir.
1997)). As to all four incidents from which plaintiff's
retaliation claims arise, no question exists that plaintiff
engaged in protected activities and that her employer was aware
of those activities as she made several complaints of racially
discriminatory treatment to Adtran supervisors and higher
management. However, regarding the initial denial of plaintiff's

25

merit raise in January of 1998 and the request that plaintiff
complete an absence slip following her one-day leave for Martin
Luther King, Jr.'s birthday, the Court finds that plaintiff has
failed to make her prima facie case. As to the other incidents,
the issuance of a written warning in January of 1998 and
plaintiff's termination in February, the Court concedes that
plaintiff has presented prima facie cases, albeit exceedingly
weak ones.

In considering plaintiff's retaliation claim arising from
the temporary denial of her pay raise, the Court finds that
plaintiff did not suffer an adverse employment action and that no
causal link exists between plaintiff's complaints of racial
discrimination and the incident. As previously discussed, no
significant evidence exists suggesting that plaintiff suffered
any harm from the initial but brief denial of her merit raise.
Furthermore, the situation was quickly corrected with no long-
term effects on plaintiff's pay or benefits. In addition to the
lack of an adverse employment action, no causal link exists
between plaintiff's protected activity, complaints that race
motivated Swimelar's decision to give plaintiff's position to a
white employee, and the denial of the raise. First, although

26

proximity in time alone may suggest a causal link,[7] the timing of plaintiff's complaint is unclear but does not appear to be so quickly followed by the denial of a raise as to suggest causation.

Even granting that plaintiff has put forth evidence supporting a prima facie case of retaliation, plaintiff has failed to offer any evidence substantially contradicting or calling into doubt the defendant's articulated, legitimate reason for the initial denial of a raise. Defendant has denied any retaliatory intent and insists that the temporary denial of plaintiff's raise was the result of an honest mistake by Williams and Swimelar, who believed that plaintiff had received a written warning during the last review period and was, therefore, ineligible for a merit raise. Plaintiff has offered no evidence that comes anywhere close to suggesting that the proffered explanation should not be believed or that she can meet her "ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for

---

[7] See Donnellon v. Fruehauf Corp., 794 F.2d 598, 598 (11th Cir. 1986) ("The short period of time, however, between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation.") (footnote omitted).

prohibited, retaliatory conduct."  Olmsted, 141 F.3d at 1460.

Plaintiff's case as to the request that plaintiff file an absence slip for leave taken in honor of the King birthday is equally feeble.  Again, plaintiff has offered no evidence of any adverse consequences that did or even could have resulted from completing the form.  Furthermore, plaintiff has not challenged in any significant manner the defendant's assertion that the request was pursuant to a new company policy requiring absence slips to be completed following pre-approved leave as well as unexcused absences.

That leaves plaintiff's two retaliation claims arising from the issuance of a written warning in January of 1998 and from plaintiff's termination in February of 1998.  Although weak, plaintiff has met her prima facie case as to both incidents. Unquestionably, a termination is an adverse employment action, Donnellon, 794 F.2d at 601, and a written warning, which would result in the denial of a pay increase at the next employee evaluation, may also be viewed as adverse.  Plaintiff has also satisfied the causation element because the brief period between plaintiff's complaints that the denial of her raise was racially motivated and the actions in question "belies any assertion by the defendant that the plaintiff failed to prove causation."  Id.

The prima facie case having been met, the burden now shifts to the defendant to offer legitimate, nondiscriminatory reasons in support of its actions.  See Olmsted, 141 F.3d at 1460.

Defendant claims that the written warning was issued on January 20, 1998, because plaintiff had been tardy on January 5 and had exceeded the allowable number of tardies and absences in a rolling six-month period.  As to plaintiff's termination, the defendant maintains that plaintiff was fired because she had not reported to work for three consecutive days and had not contacted her supervisor, in violation of company policy.  Plaintiff attempts to rebut the defendant's articulated legitimate reasons largely with the same evidence comprising her prima facie case, in particular, the proximity of the adverse decisions to her complaints of discrimination.  Although the Court is not fully convinced that plaintiff has presented sufficient evidence of pretext or illegal intent, acting from an abundance of caution, the Court will deny summary judgment on these two retaliation claims for the present to allow plaintiff additional time to further develop and define any evidence of pretext and retaliation.

In summary, the Court finds that no material issues of fact remain and that defendant Adtran is entitled to judgment as a

29

matter of law as to all of plaintiff's claims except her Title VII retaliation claims relating to the issuance of a written warning in January 1998 and to her termination in February 1998. However, the degree of overlap between plaintiff's multiple claims and the evidence offered for each, begs that speedy review of this decision be available to eliminate the potential that a needlessly duplicative second trial could be required in the unlikely event that this Court's decision is reversed.  A separate order will be entered.

DONE this ___17th___ day of February, 2000.

_____
SENIOR UNITED STATES DISTRICT JUDGE